IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Shango Damballah,                      )
formerly known as Harold S. Mosley,    )      Case No. 8:12-cv-02832-DCN-JDA
                                       )
          Plaintiff,                   )      **REPORT AND RECOMMENDATION**
                                       )      **OF MAGISTRATE JUDGE**
          v.                           )
                                       )
William R. Byars, Jr., Dir. of SCDC,   )
Tim Riley, Warden, TRCI,               )
P. Crider, Postal Director, TRCI,      )
Walter Sumner, Sergeant TRCI,          )
Blake H Lanford, Ofc. TRCI,            )
John H Carmichael, Jr., and John Doe,  )
                                       )
          Defendants.                  )
_____)

        This matter is before the Court on Defendants' motion for summary judgment. [Doc.

40.] Under the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d),

D.S.C., magistrate judges are authorized to review all pretrial matters in cases filed under

42 U.S.C. § 1983, and to submit findings and recommendations to the District Court.

        Plaintiff, proceeding pro se, brings this action against Defendants alleging violation

of his constitutional rights because he did not receive certain magazines to which he

subscribes and because his book, the "Marx-Engels Reader" was improperly confiscated

from his cell. [Doc. 1.] Defendants filed their motion for summary judgment on March 14,

2013. [Doc. 40.] By Order filed that same day pursuant to *Roseboro v. Garrison*, 528 F.2d

309 (4th Cir. 1975), Plaintiff was advised of the dismissal/summary judgment procedure and

the possible consequences if he failed to adequately respond to the motion. [Doc. 41.]

Plaintiff filed a timely response on May 9, 2013. [Doc. 47]. Accordingly, the motion is now

ripe for review.

## BACKGROUND

Plaintiff is an inmate at Kershaw Correctional Institution in Kershaw, South Carolina. [Doc. 28 at 2.] At the time of the alleged events, Plaintiff was incarcerated at Tyger River Correctional Institution ("TRCI"). [*Id*. at 4.] Plaintiff has been incarcerated in the South Carolina Department of Corrections for twenty-six years. [Doc. 47-2 at 1.] During that period, Plaintiff was housed in a Special Management Unit ("SMU") from August 25, 2010, until October 27, 2010, and from May 23, 2011, until January 29, 2013. [Doc. 40-6.] Plaintiff alleges that on October 12, 2010, while housed in the SMU, he received a "Notice of Rejected Incoming/Outgoing Correspondence" informing Plaintiff that he had received a publication from Rising Sun Press, which the Correspondence Review Committee ("CRC") had disapproved. [Doc. 28 at 5.] Plaintiff was informed that he did not have sufficient funds in his account to return the publication to the sender and if he did not provide the cost of the return postage within thirty days his publication would be destroyed per policy. [*Id*.] The publication was destroyed and Plaintiff filed a grievance. [*Id*.] Plaintiff received a response that his publication was censored for security reasons. [*Id*. at 6.] On September 21, 2011, Plaintiff received a second "Notice to Withhold Incoming/Outgoing Correspondence," informing him that his publication "United Panther Movement" was being reviewed by the CRC, which required 60 days. [*Id*.] Plaintiff again filed a grievance. [*Id*.] The CRC reviewed both publications at issue here and both were "found to advocate either racial, religious or national hatred in a way that could lead to the risk of physical violence or group disruption." [Doc. 40-7].

On September 17, 2011, while Plaintiff was in the shower, Defendant Blake

confiscated "the Marx-Engels Reader" from Plaintiff's cell. [*Id.*] Plaintiff filed a grievance and was informed that his book was confiscated in accordance with SCDC policy 08-2203, "Authorized Property and Disposition of Unauthorized Property." [*Id.* at 7.] Plaintiff was able to order the Marx-Engels Reader from the library. [Doc. 47-2 at 3.] Plaintiff also admits he had access to religious materials and legal materials while in the SMU. [Doc. 47-1 at 5-6.] All incidents arose at the time Plaintiff was housed in the SMU. [*See* Doc. 40-6.]

## APPLICABLE LAW

### Liberal Construction of Pro Se Complaint

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a

State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When

determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

Plaintiff alleges violation of "freedom of expression, due process, and equal treatment under the law" for the confiscation of his publications and his Marx-Engels reader and because Defendants failed to give his grievances an individualized review. [Doc. 28 at 3.] In their motion, Defendants argue summary judgment should be granted because Plaintiff's claims are moot, Plaintiff's allegations do not rise to the level of a constitutional violation; Defendants are entitled to qualified immunity; Defendants cannot be held liable under the doctrine of respondeat superior; Defendants are not liable based on the theory of supervisory liability; and Plaintiff has no right to a grievance procedure. [Doc. 21-1.] The Court agrees summary judgment should be granted.

**Mootness**

As an initial matter, Plaintiff's claims for injunctive and declaratory relief are moot because he has been transferred from TRCI to Kershaw Correctional Institution. Moreover, Plaintiff is no longer housed in the SMU, but is instead among the general population. Therefore, regulations that apply to the SMU at TRCI are no longer applicable to Plaintiff.[1]

---

[1] Even if Plaintiff were placed back in the SMU, it would be at Kershaw and not at TRCI; therefore, he would be subject to that facility's policies.

Therefore, his requests for the Court to declare and/or enjoin these regulations are moot; however, his claim for monetary damages survives. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (finding plaintiff's injunctive and declaratory relief claims moot after his transfer to a different facility). Therefore, the Court proceeds to the merits of the claims.

**Legitimate Penological Interest**

   ***SMU Policy***

   SMUs are separate areas apart from the general population of the prison to "house those inmates requiring more intense levels of supervision and monitoring." [Doc. 40-2 at 1.] SMU inmates are entitled to legal materials and to their primary religious book and are entitled to send and receive mail in accordance with SCDC Policy PS-10.08. [*Id*. at 11-13.] SMU inmates are not allowed to receive newspapers. [*Id*. at 13.] Moreover, pursuant to SCDC Policy 10.08, inmates are not allowed to have materials that "advocate racial, religious or national hatred in such a way that could lead to the risk of physical violence or group disruption" because such materials pose a security threat to other prisoners and the corrections staff. [Doc. 40-1 at 4.] SMU inmates may possess one approved book or magazine at a time from Library Services (and only from Library Services) and must return that book or magazine to receive another one. [*Id.* at 1; Doc. 40-2 at 12.]

   One of the main purposes for the restriction on property in the SMU is to "create an incentive or motivation for inmates placed in SMU to change their behavior to either obtain release from SMU or to avoid placement in SMU." [Doc. 40-1 at 2.] The SMU is "not designed to be a favored or comfortable housing unit" and the restrictive policies underpining the SMU are designed to "foster discipline and order for inmates both within

SMU and outside the unit." [*Id*.] Warden Riley also testified that the restriction on books and magazines has a security benefit in that it reduces clutter and thus hiding places for contraband, reduces the fire hazard in the unit and reduces the chance of the inmates using the paper for inappropriate purposes like covering cell windows to conceal illicit activities. [*Id*. at 2-3.]

### *Turner Factors*

Here, Plaintiff contends that his First and Fourteenth Amendment rights were violated because his access to reading materials and magazines in the SMU was limited, and he argues that Defendants' proffered reasons for the limits are not reasonable. Prison officials may adopt regulations that impinge on a prisoner's constitutional rights if those regulations are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Legitimate penological interests include preserving prison security and maintaining order and discipline. Moreover, in noting the delicate nature of prison management, the Supreme Court has "afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989) (citation omitted).

In considering whether policies comply with the dictates of *Turner*, the Supreme Court identified four factors for courts to consider: (1) whether there is a rational connection between the regulation and the legitimate government interest; (2) whether there are alternative means available to the prisoner to express their rights; (3) the impact of the asserted constitutional right on guards and other inmates, as well as the allocation of

resources in the prison; and (4) whether there is an absence of readily available alternatives. *Turner*, 482 U.S. at 89-91.

Defendant Riley enumerated the rationales for the policy of allowing the inmates only one book or magazine at a time from library services and disallowing all newspapers: to encourage good behavior from SMU inmates so they would have an incentive to be released into the less-restrictive general population, to diminish clutter and places to hide contraband, to reduce the risk of fire, and to act as a deterrent for using the paper materials for improper purposes like covering windows or jamming locks. [Doc. 40-1.] Plaintiff counters that inmates in the SMU have access to at least one book from Library Services in addition to their primary religious book and their legal materials. Therefore, he claims, the given reasons of clutter, risk of fire and use for improper purposes fail. The Court disagrees and finds that there is a rational relationship between the regulation and the governmental interest. Primarily, as the warden points out, such regulations encourage prisoners to avoid being housed in SMU, where the restrictions are more onerous than in general population. Second, just because the prison has not banned all paper materials from the SMU does not mean that limiting such materials does not diminish certain risks associated with them. The SCDC policy is rationally related to a legitimate government objective.

As to the second prong of the *Turner* test, there are alternative avenues available to Plaintiff to express his rights. All books and magazines are not forbidden in the SMU. At the time he was housed on the unit, Plaintiff acknowledges he had access to his religious materials and his legal materials. [Doc. 47-1 at 5–6.] He acknowledges that he had access to the library materials, but that they were limited to one at a time. In fact, Plaintiff made a

request for and received the Marx-Engels reader once he made a proper request for it. [Doc. 47-9.] Therefore, the second prong of the *Turner* test is met.

Third, the policy has an impact on other guards and prisoners because it encourages SMU inmates to behave so as to be released from the restrictive unit, and encourages general population inmates to behave so as not to be placed in SMU. As a result, the third requirement of *Turner* is met. *See Beard v. Banks*, 548 U.S. 521, 531 (2006) (the rationale of "motivating better behavior on the part of these particularly difficult prisoners by providing them with incentive" to move out of the unit satisfies *Turner*'s requirements (internal quotations omitted)).

Finally, Plaintiff has not offered a ready alternative to the policy that undermines its reasonableness, and as the Supreme Court stated in *Beard*, the policy of restrictions to encourage good behavior meets the dictates of *Turner*. Therefore, this Court joins with many others in this District in determining that the policy at issue here of allowing only one book or magazine from Library Services and no newspapers in the SMU is reasonably related to a legitimate penological goal.[2] *See, e.g., Peoples v. Burtt*, 8:07-CV-2702-CMC-BHH, 2008 WL 2315865 (D.S.C. May 30, 2008); *Owens v. SCDC*, 8:09-CV-278-GRA, 2009

---

[2] The Court need not determine whether the CRC appropriately disapproved of the content of Plaintiff's periodicals pursuant to SCDC Policy 10.08, because the Court has determined that the SMU policy allowing Plaintiff access only to books and magazines from Library Services served a legitimate penological interest. Moreover, to the extent Plaintiff attempts to assert a constitutional violation because his filed grievance about his disallowed periodicals did not receive individualized attention, the law is well settled that there is no constitutional right to a grievance procedure. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38 (1977). Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure"); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding prison official's failure to comply with state's grievance procedure is not actionable under § 1983); *Doans v. Rice*, 831 F.2d 1057 (4th Cir. 1987) (noting inmate grievance procedures are not constitutionally required) (unpublished table decision). Thus, even if Plaintiff's grievance did not receive individual attention, Plaintiff has not stated a constitutional claim.

WL 4807005 (Dec. 8, 2009); *Koon v. Ozmint*, 8:06-CV-2000-RBH, 2007 WL 1486067 (D.S.C. May 18, 2007).[3]

**Property Deprivation**

To the extent Plaintiff alleges he was deprived of his property when his periodicals were destroyed, a prisoner's claim for deprivation of personal property is not cognizable under § 1983. *Parratt v. Taylor*, 451 U.S. 527, 544 (1981) (holding that a prisoner was "deprived" of his property within the meaning of the due process clause of the Fourteenth Amendment but that the state's tort remedy provided all the process that was due) (overruled by *Daniels v. Williams*, 474 U.S. 327, 330-31, "to the extent that [*Parratt*] states that mere lack of due care by a state official may 'deprive' an individual of life, liberty or property under the Fourteenth Amendment." Therefore, only an intentional deprivation of property by a state official may violate the Due Process clause.); *see also Pittman v. Doty*, No. 09-0801, 2009 WL 1160933 at *3, (D.S.C. April 29, 2009) (holding that if state law "post-deprivation" remedies are available, no further due process required for prisoner's claims that defendant was intentionally withholding the plaintiff's money). Here, Plaintiff could have instituted a civil action in the state courts to recover his personal property under S.C. Code § 15-69-10 et seq. *See McIntyre v. Portee*, 784 F.2d 566, 567 (4th Cir. 1986). Therefore, Plaintiff has failed to establish he has been deprived of any constitutional right.

---

[3] Plaintiff urges the Court to consider a portion of an order he attached from the case *In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464 (4th Cir. 1999). In that case the Fourth Circuit determined that the long-term segregation of members of the group the Five Percenters in a high security unit was constitutional, even with the heavy restrictions placed on prisoners in that unit. *Id.* The small portion of Judge Duffy's District Court Order in the case, which Plaintiff attaches to his response, does not support the Plaintiff's position. In that order, Judge Duffy enjoined the SCDC from a "*total* ban on inmate possession of Five Percenters literature." [Doc. 47-5 at 1 (emphasis added).] The policy at issue here does not enforce a total ban on literature and allows Plaintiff access to his religious literature.

Even liberally construing the Complaint, Plaintiff's alleged facts do not state cognizable constitutional claims.

**Qualified Immunity**

Defendants also are entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . . whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). District court and courts of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, as discussed above, Plaintiff's allegations fail to demonstrate

that Defendants violated Plaintiff's constitutional rights. Therefore, the Court finds Defendants are entitled to qualified immunity.[4]

**State Law Claims**

To the extent Plaintiff attempts to allege a state law claim in addition to his § 1983 claim, such a state law claim could be heard by this Court only through the exercise of supplemental jurisdiction, which allows federal courts to hear and decide state law claims along with federal law claims.[5] Federal courts are permitted to decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3), however, if "the district court has dismissed all claims over which it has original jurisdiction." To the extent Plaintiff bases his claim on state law, the Court recommends that the district judge decline to exercise supplemental jurisdiction in this case.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

October 18, 2013
Greenville, South Carolina

---

[4] Because the Court has determined that the Defendants are entitled to qualified immunity, the undersigned need not determine whether other immunities or defenses, such as Eleventh Amendment immunity or the doctrine of respondeat superior, would apply.

[5] A civil action for Plaintiff's state law claims could be cognizable in this Court under the diversity statute, if that statute's requirements are satisfied. However, this Court does not have diversity jurisdiction in this case because Plaintiff and Defendants are all citizens of the State of South Carolina, which defeats the required complete diversity of parties. *See* 28 U.S.C. § 1332.